| | |
|---|---|
| CHARLES L. THORNTON,<br>　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　Defendant. | **MEMORANDUM AND<br>RECOMMENDATION** |

　　　This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-20, DE-22] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Charles L. Thornton ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings, and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

　　　Claimant protectively filed an application for a period of disability and DIB on May 11, 2010 alleging disability beginning November 6, 2009. (R. 11.) His claim was denied initially and upon reconsideration. (R. 11, 51–75.) A hearing before the Administrative Law Judge ("ALJ") was held on August 15, 2011, at which Claimant was represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 29.) On August 26, 2011, the ALJ issued a

decision denying Claimant's request for benefits. (R. 22.) Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 7) and submitted additional evidence as part of his request. (R. 5.) After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on September 12, 2012. (R. 1–6.) Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g) (2012). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance," *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

# DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id*. At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §404.1520a(c)(3) (2013). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." 20 C.F.R. § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of whether Claimant's impairments meet or medically equal Listing 12.04; and (2) improper assessment of Claimant's residual functional capacity ("RFC"). (Pl.'s Mem. Supp. Mot. J. Pleadings ("Pl.'s Mem.") [DE-21] at 7, 9.)

# FACTUAL HISTORY

## I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 13.) Next, the ALJ determined Claimant had the following severe impairments: right shoulder rotator cuff tear, depressive disorder, anxiety disorder, and mild degenerative joint disease of the hips and knees. (*Id.*) The ALJ also found Claimant had a non-severe impairment of dermatitis. (*Id.*) However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild to moderate limitations in his activities of daily living, social functioning, and concentration, persistence, and pace with no episodes of decompensation. (R. 14.)

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work subject to the following limitations: (1) sitting, standing, or walking up to six hours in an eight-hour workday; (2) performing frequent climbing of ramps and stairs and occasional climbing of ropes, ladders, or scaffolding; (3) performing no overhead reaching; (4) performing work comprised of simple, routine, repetitive tasks; (5) adaptation to routine changes in the work environment; (6) occasional contact with the public; and (7) working at a non-production pace. In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 18.)

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a maintenance building repairer. (R. 20.) Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 21–22.) The VE testified that these jobs exist in significant numbers in the state economy as well. (R. 46–47.)

## II. Claimant's Testimony

At the time of Claimant's administrative hearing, Claimant was 50 years old, had received a GED, and was unemployed. (R. 31–32, 34.) Claimant was last employed with the Pitt County Detention Center for approximately ten years, where his duties included maintenance work. (R. 33). Claimant's past work experience also includes cutting grass and working as an electrician. (R. 33–34.)

Claimant purported that numerous medical conditions support his disability claim and his inability to work full time. He complained of pain in his shoulder, hip, feet, and knee. (R. 35–36, 39.) He testified to receiving injections in his left knee and hip to relieve pain. (R. 36.) Originally, Claimant was prescribed Naproxen for the pain in his feet, but this caused Claimant to go into renal failure. (R. 37.) Once Claimant was removed from the medication, his kidneys returned to normal. *Id.* At the time of the hearing, Claimant was taking a prescribed dose of hydrocodone to relieve the pain in his shoulder. (R. 35.) Claimant stated he cannot stand for long periods of time, and, when sitting, he must readjust his position every ten to fifteen minutes. (R. 39.) He also asserted that he cannot lift more than ten pounds due to the injury and pain in his shoulder. (R. 40.)

5

Case 4:12-cv-00263-D   Document 25   Filed 11/27/13   Page 5 of 14

Claimant was prescribed a series of anti-depressant and anti-anxiety medication. (R. 38.) As of the date of hearing, Claimant was taking Celexa for his depression and anxiety. (*Id.*) He testified that Celexa was the best medication of those that he had tried, but he was still having bouts of depression at least once a week and still had suicidal thoughts. (*Id.*) Claimant sees a psychiatrist once every two months, has seen improvement on the current medication, but is "still not right." (*Id.*) He sometimes has difficulty working with others and has been known to "fly off the handle." (R. 39.) Claimant testified that he is unable to work mainly due to his depression and anxiety. (R. 44.)

### III. Vocational Expert's Testimony

Julie Sawyer-Little testified as a VE at the administrative hearing. (R. 45.) After the VE's testimony regarding Claimant's past work experience (R. 46), the ALJ posed the following hypothetical question:

> Assume the existence of an individual who is 48 to 50 years old during the period at issue, thus is considered to be younger to closely approaching advanced age; has a GED; past work as described. Assume further this individual has the residual functional capacity to perform light work with lifting up to 20 pounds occasionally and up to 10 pounds frequently; stand [sic] and walking up to six hours total in an eight-hour day; sitting up to six hours total of an eight-hour day; frequent climbing of ramps and stairs; occasional climbing of ropes, ladders, scaffold. There should be no repetitive reaching overhead. The work should be unskilled, simple, routine, repetitive in nature; routine changes only in the work environment, with occasional contact with the public. Would he be able to do any of the past work?

(R. 46.) The VE responded in the negative. (*Id.*) The ALJ then asked if there was other work that the hypothetical claimant could perform. (*Id.*) The VE responded in the affirmative and noted that such a claimant could perform the following jobs: small products assembly (DOT 706.684-022, light work, unskilled), inserting machine operator (DOT 208.685-018, light work, unskilled), and mail sorter (DOT 209.687-026, light work, unskilled). (*Id.*)

6

After the ALJ added the additional restriction that there should be no overhead reaching, the VE testified the change would eliminate the mail sorter job and the hypothetical claimant could perform the job of a photo machine operator (DOT 207.685-014, light work, unskilled). (R. 46–47.) The ALJ added the additional restriction that the work should be non-production oriented, and the VE testified that this would eliminate the small products assembler position as well as the inserting machine operator position. (R. 47.) However, the hypothetical claimant could perform the following jobs: office helper (DOT 239.567-010, light work, unskilled) and Marker (DOT 209.587-0 [sic], light work, unskilled). (R. 47).

The VE concluded that all jobs existed in significant numbers in both the state and national economies. (R. 46–47.)

## DISCUSSION

### I. Medical Listing 12.04

Claimant contends that the ALJ erred in finding Claimant's mental impairment did not meet or medically equal listing 12.04. (Pl.'s Mem. at 7.) The undersigned disagrees.

Ordinarily, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (internal quotation marks omitted) (quoting *Craig v.*

*Charter*, 76 F.3d 585, 590 (4th Cir. 1996)). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.*

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given to the treating physician's opinion by applying the following factors: (1) the length of treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in which the opinion is rendered. 20 C.F.R. 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

S.S.R. 96-2p, 1996 WL 374188, at *4 (July 2, 1996).

An ALJ must give medical opinions controlling weight under certain circumstances, but the ALJ is under no obligation to give a physician's legal conclusions "heightened evidentiary value." *Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005); *see also* 20 C.F.R. § 404.1527(d)(2). The ALJ is not free "simply to ignore a treating physician's legal conclusions, but must instead 'evaluate all the evidence in the case record to determine the extent to which the [treating physician's legal conclusion] is supported by the record.'" *Morgan*, 142 F. App'x at 722 (alteration in original) (quoting S.S.R. 96-5p, 1996 WL 374183, at *3 (July 2, 1996)). The final

8

decision of whether a claimant meets the requirements of a listing is a legal conclusion reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2).

In order to meet the criteria of Listing 12.04, a claimant must show both medically documented depressive or manic symptoms that result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, subpart P, app. 1. In the alternative, the Claimant may show a

> [m]edically documented history of chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms for signs currently attenuated by medication or psychosocial support, and one of the following: (1) [r]epeated episodes of decompensation, each of extended duration; . . . ; or (3) [c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id.*

In the instant case, the ALJ is under no obligation to accept Dr. Mayo's legal conclusion that Claimant is disabled through meeting the requirements under Listing 12.04. The ALJ addressed several factors leading her to assign Dr. Mayo's assessment no weight. The ALJ addressed several inconsistencies within Dr. Mayo's own notes, as well as notes taken by Claimant's other physicians. Additionally, the ALJ addressed her reasoning behind discounting Dr. Mayo's assessment under Listing 12.04, saying that there was no evidence in the medical records satisfying the Listing requirements. The ALJ also acknowledged that Claimant had seen Dr. Mayo over an extended period of time, but that those visits were only every other month and lasted only fifteen minutes per visit. The ALJ found that Claimant's statements as to the severity of his impairment were inconsistent with the short length and infrequency of the appointments.

Although the ALJ did not assign a specific weight to Dr. Mayo's medical opinions, she used them in making her disability determination concerning Claimant. She examined inconsistencies among all of the records, including: Claimant's own statements, the statements of his wife, medical records from Dr. Mayo, medical records from Claimant's orthopedist, and records from Physician's East. The ALJ made a direct weight determination concerning Dr. Mayo's assessment under Listing 12.04 and gave deference to Dr. Mayo's medical opinion. The ALJ made findings that Claimant had mild restrictions in activities of daily living, moderate difficulties in social function and with regard to concentration, persistence or pace, and no episodes of decompensation. Thus, the ALJ concluded that Claimant's depressive disorder and anxiety disorder are both severe impairments. The ALJ took Claimant's mental impairments into account in the RFC by further limiting Claimant from light work to work that is simple, routine and repetitive, has only routine changes, and with only occasional contact with the public. Moreover, though the State Agency cleared Claimant for medium work, the ALJ limited Claimant to light work in order to take into account the combined effect of Claimant's physical and mental impairments.

There is substantial evidence supporting the conclusion that Claimant is capable of performing work at jobs that exist in significant numbers in the state and national economy. The ALJ did not specifically assign a weight to Dr. Mayo's medical opinion beyond the assessment pertaining to Listing 12.04, but it is clear from her decision that the ALJ found Dr. Mayo's medical opinion to be credible, persuasive, and consistent with other medical records. The ALJ found that Claimant's depressive disorder and anxiety disorder were severe impairments. Further the ALJ limited Claimant to positions with only routine changes, occasional contact with the public, and involving simple, routine, repetitive tasks. The ALJ's decision goes through the Claimant's

medical records document by document in great detail. It is clear from her decision which opinions she is assigning greater or less weight. Remanding to have the ALJ assign a specific weight to Dr. Mayo's medical opinion would not change the outcome. Thus, even assuming the ALJ erred in failing to indicate the weight assigned Dr. Mayo's opinions, it was a harmless error. *Morgan*, 142 F. App'x at 729 (recognizing the harmless error doctrine within the social security context).

The ALJ did not err in determining that Claimant did not meet or medically equal the requirements of Listing 12.04. The ALJ was under no obligation to accept Dr. Mayo's legal conclusion and properly evaluated Dr. Mayo's medical opinion evidenced in the record. Therefore, the ALJ did not err in her determination that Claimant did not satisfy the requirements of Listing 12.04. Further, assuming the ALJ erred, the error was harmless.

## II. Residual Functional Capacity

Claimant asserts that the ALJ erred in the RFC determination because: (1) the ALJ improperly evaluated Dr. Patricia Hinson's medical opinion concerning Claimant's work capabilities; and (2) Claimant's testimony was credible and established his inability to work. (Pl.'s Mem. at 9–11.) The undersigned disagrees.

As discussed above, the ALJ concluded that Claimant could perform light work but applied several additional restrictions. In reaching her conclusion, the ALJ noted Dr. Patricia Hinson's assessment and acknowledged limitations of impairments to Claimant's shoulder, hips, and knees evidenced in Claimant's medical records by adding exertional, climbing, and reaching limitations.

The ALJ has the discretion to give less weight to a treating physician's testimony in the face of contrary evidence. *Mastro*, 270 F.3d at 178. Here, the ALJ analyzed medical records indicating that Claimant had suffered an injury to his shoulder and had pain in his shoulder, knees,

and hips. There was also evidence that Claimant continued to mow lawns the summer after his injury, he still engaged in "physical" work, and his pain was controlled with medication. The fact that Claimant engaged in physically demanding work was inconsistent with Dr. Hinson's evaluation that Claimant was unable to perform even the demands of sedentary work. Additionally, throughout the two years of medical records from Physician's East, there is no indication of a limited range of motion in Claimant's shoulder, and only a slight weakness in his right arm was noted. Because of the inconsistency existing within Dr. Hinson's own records over the course of Claimant's treatment, the ALJ found, in her discretion, that Dr. Hinson's evaluation of Claimant should be afforded little weight.

Secondly, Claimant contends that his testimony was credible and showed his inability to work due to his physical and mental impairments. In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig v. Chater*, 76 F.3d at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p, 1996 WL 374186 (July 2, 1996). When an ALJ fails to specify the reasons for an adverse credibility determination, remand is appropriate. *See Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (concluding that remand was appropriate because the ALJ failed to adequately explain the basis of his credibility determination).

12

Case 4:12-cv-00263-D   Document 25   Filed 11/27/13   Page 12 of 14

The ALJ looked at Claimant's statements and medical records in order to determine whether Claimant's medically determinable impairments would reasonably cause his symptoms of pain and depression/anxiety. Based on Claimant's shoulder injury and records indicating arthritis in his hips and knees and neuroma in his feet, the ALJ determined that Claimant's impairments could reasonably cause his symptoms of pain. Further, based on Claimant's diagnosis of major depressive disorder, the ALJ determined that his mental impairment could reasonably cause his depressive symptoms.

Here, the ALJ extensively laid out the inconsistencies between the Claimant's statements concerning his impairments and the information evidenced in the medical record. Claimant stated he continued to have bouts of depression and suicidal thoughts, but the medical records indicate he has experienced improvement and that he has appeared to stabilize since being on Celexa and Ativan. As of July 13, 2011, Claimant reported to Dr. Mayo that Celexa was helping, and his depressive symptoms were stable. He stated to his primary care physician at one point that he was doing better and wanted to quit therapy. Yet, his reason for not being able to work was depression. As to Claimant's physical impairments, claimant reported to his medical provider that he engaged in "physical" work. The medical records indicate Claimant possessed a full range of motion in his shoulder with only a slight weakness on his right side. The records also indicate that Claimant was given steroid injections and pain medication to control his pain.

Thus, due to the inconsistencies, the ALJ correctly concluded that Claimant's testimony was not fully credible regarding his physical and mental impairments. Because the ALJ properly exercised her discretion in determining the weight to be given Dr. Hinson's opinion and Claimant's credibility in making the RFC determination, the ALJ did not err.

## **CONCLUSION**

For the reasons stated above, the undersigned RECOMMENDS that Claimant's Motion for Judgment on the Pleadings [DE-20] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-22] be GRANTED and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 27th day of November 2013.

KIMBERLY A. SWANK
United States Magistrate Judge